IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

THEODORE STREATER                          §

VS.                                        §          CIVIL ACTION NO.   9:15-CV-68

SHARON ALLEN, ET AL.                       §

MEMORANDUM OPINION AND ORDER

Plaintiff Theodore Streater, an inmate previously confined at the Eastham Unit of the Texas

Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se* and *in forma*

*pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, against Assistant Warden

Sharon Allen, Senior Warden Charles Bell, Gang Intelligence Sergeant Bryan Bunnell, Unit

Grievance Investigator Terri Hall, Unit Grievance Investigator Staci Crowley, and Classification

Officer Joanie Jones Turner.  The defendants are employed at the Eastham Unit.

Factual Background

On December 22, 2014, plaintiff alleges he filed a grievance alleging defendants Bell and

Allen violated his rights under the RLUIPA and the First Amendment.  In his grievances, plaintiff

complained that he was unable to attend religious services during a prison lockdown.  Plaintiff also

complained that he did not receive a hot meal for at least a week, and, when he did receive hot meals

during the lockdown, he was served beans.

On February 5, 2015, defendant Bunnell searched plaintiff's assigned cubicle in the

dormitory, allegedly at the direction of defendant Allen.  Defendant Bunnell allegedly remarked that

plaintiff was "the offender who files all of the grievances."  During the search, defendant Bunnell

confiscated a typewriter that belonged to another inmate. Plaintiff alleges defendant Allen directed defendant Bunnell to charge plaintiff with possession of contraband and to place plaintiff in prehearing detention. Plaintiff explained that he had the other inmate's typewriter because they were working on legal documents together, but he was still charged with a disciplinary infraction for possessing the other inmate's typewriter. Plaintiff also contends that defendant Bunnell searched plaintiff's legal documents and threw them on the dormitory floor.

Plaintiff alleges defendant Allen accused him of extorting money from another inmate. Plaintiff requested the Office of the Inspector General (OIG) to conduct an investigation into the allegation, which plaintiff alleges was false. Plaintiff alleges the OIG investigator later told him that the extortion allegations were unfounded, and plaintiff never received a disciplinary charge for extortion.

On February 24, 2015, plaintiff was served with a disciplinary case charging him with possessing the typewriter, which was considered contraband because it belonged to another inmate. Plaintiff contends he was charged with the disciplinary offense in retaliation for filing grievances. Plaintiff alleges the disciplinary charge was reduced from a major violation to a minor violation prior to the disciplinary hearing. Plaintiff pleaded not guilty to the charge, but he was found guilty and given the minimum punishment. Plaintiff alleges he was placed in transit status after the hearing. Plaintiff sent an inmate request to defendant Jones asking why he was assigned to transit housing when he did not meet the criteria for that housing assignment. The next day, plaintiff was moved to cell block housing, which is a more restrictive housing area than the dormitory where he was previously assigned. Plaintiff also alleges his new cell was filthy and unsanitary.

Plaintiff alleges defendants Allen, Bell, Hall, Crowley, and Jones conspired against him by refusing to process plaintiff's grievances and by impeding the investigation ordered by the Office of the Inspector General. Plaintiff also contends he was discriminated against because white inmates who had received major disciplinary charges were not removed from the dormitory.

## Defendants' Motion for Summary Judgment

Defendants contend that plaintiff cannot prevail on his RLUIPA and First Amendment claims because any restrictions on plaintiff's religious practice were the least restrictive means of furthering a compelling government interest. Defendants contend that plaintiff failed to exhaust claims regarding the conditions of his confinement. Defendants assert that the competent summary judgment evidence shows that the defendants did not violate plaintiff's constitutional rights. Finally, defendants contend they are entitled to qualified immunity.

## Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. International Shipping Partners*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991); *Jackson v. Procunier,*

789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

Analysis

*I. Title 42 U.S.C. 1983 Claims*

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, causes another to be deprived of a federally protected constitutional right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)*; Phillips v. Monroe County*, 311 F.3d 369, 373 (5th Cir. 2002), *cert. denied*, 539 U.S. 914 (2003). Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured . . . .

42 U.S.C. § 1983.

*A. Exhaustion*

Title 42 U.S.C. § 1997e(a) requires prisoners to exhaust administrative remedies before filing a civil rights action. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The statute provides, "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and is intended to give correctional officials an opportunity to address complaints internally before initiation of a federal suit. *See Porter v. Nussle*, 534 U.S.

516, 525 (2002). The exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or particular episodes. *Id.* at 532. Prisoners must exhaust administrative remedies before filing a lawsuit regardless of the type of relief prayed for in the complaint. *Booth v. Churner*, 532 U.S. 731, 741 (2001). Because exhaustion is a threshold issue, the district court may resolve factual disputes concerning exhaustion without a jury. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

The Texas Department of Criminal Justice, Correctional Institutions Division has a two-step grievance procedure available to inmates. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998). The prisoner must pursue the grievance through both steps for his claim to be exhausted. *Johnson*, 385 F.3d at 515. A prisoner does not exhaust administrative remedies by simply filing each step without regard for procedural requirements. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Defendants contend that plaintiff's complaints regarding the condition of his cell should be dismissed because plaintiff did not exhaust administrative remedies with respect to those claims before he filed this action. On March 31, 2015, plaintiff filed a Step 1 grievance, #201516530 complaining about the allegedly dirty, unsanitary conditions in his assigned cell. On May 11, 2015, Warden Reeves responded to the grievance and described the actions that were being taken to correct the problems. Plaintiff filed this action on May 1, 2015, before he had received a response to his Step 1 grievance, and he never filed a Step 2 grievance. Therefore, the claims concerning the cleanliness of his cell are unexhausted and should be dismissed.

*B. Qualified Immunity*

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Federal courts use a two-part test to determine whether the defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). The Court must determine whether plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the Court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The district court has discretion to decide which prong of the two-part test to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff's allegations meet the second prong of the test because his rights to be free from retaliation, to access to the courts, to equal protection, and to freely exercise his religion were clearly established at the time of the alleged violations. Thus, the court must determine whether plaintiff has alleged facts demonstrating a constitutional violation.

*1. Retaliation*

Plaintiff contends the defendants pursued disciplinary action against him and assigned him to new housing to retaliate against him for filing grievances. "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *Perry v. Sinderman*, 408 U.S. 593, 597 (1972). However, retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).

To establish a retaliation claim, an inmate must prove: (1) he was exercising a specific constitutional right, (2) the defendant intended to retaliate against the inmate for exercising that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). Conclusory allegations are insufficient to establish a retaliation claim. *Woods*, 60 F.3d at 1166. The inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004).

Plaintiff arguably meets the first prong of the test because he alleges the defendants retaliated against him for exercising his constitutional rights to file grievances. However, plaintiff has not demonstrated that the defendants intended to retaliate against him. Plaintiff alleges he heard comments about the large volume of grievances he filed. However, there is no competent summary judgment evidence that the defendants took adverse action against plaintiff for filing those grievances. Plaintiff also failed to allege a chronology of events from which retaliation may be

7

inferred. Because plaintiff failed to establish a claim of retaliation, the defendants are entitled to qualified immunity, and the retaliation claims against them should be dismissed.

### 2. Access to Courts

Prisoners have a right to access to the courts protected by the First Amendment right to petition for redress of grievances, and the Fourteenth Amendment guarantees of procedural and substantive due process. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986). This right can be satisfied through appointed counsel, access to a law library, or access to legally trained paraprofessionals. *Bounds*, 430 U.S. at 830-31. However, *Bounds* "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). Rather, the right of access to the courts requires that inmates be allowed a reasonably adequate opportunity to file non-frivolous cases challenging their convictions and the conditions of their confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. In order to recover for a denial of access to the courts, an inmate must show that "an actionable claim [involving a challenge to a sentence or conditions of confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented . . . ." *Id.* at 356; *see also Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005) (affirming dismissal of access to courts claim because plaintiff did not show that the defendant's actions delayed her ability, or deprived her of her right, to avail herself of the legal process).

Plaintiff alleges his legal documents were searched and strewn across the floor. However, plaintiff has not demonstrated that the defendants' actions prevented him from pursuing a non-frivolous claim concerning his criminal prosecution or the conditions of his confinement. Therefore, the defendants are entitled to summary judgment with respect to this claim.

### 3. Equal Protection

Plaintiff alleges his reassignment to a cell block was discriminatory because white inmates charged with major disciplinary infractions were allowed to remain in the dormitory.

In order to state a claim of discrimination under the Equal Protection Clause, plaintiff must demonstrate that he was treated differently than other similarly-situated individuals, and that the unequal treatment stemmed from a discriminatory purpose. *Priester v. Lowndes County*, 354 F.3d 414, 424 (5th Cir. 2004). A discriminatory purpose "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

Aside from his personal belief that white inmates were treated more leniently, plaintiff has offered no evidence in support of his equal protection claim. The competent summary judgment evidence shows that plaintiff's housing assignments complied with prison policy, which requires the consideration of security needs of the prison unit at the time a classification and housing adjustment is made. In an affidavit, defendant Bell states that plaintiff's housing and classification were adjusted pursuant to policy and security concerns and the availability of housing based on plaintiff's classification, and the housing decisions were not based on any discriminatory intent. Motion for Summary Judgment, Exhibit C at 4. Further, plaintiff has not demonstrated that the other inmates

9

were similarly situated or that the same prison officials made the classification decisions in each case. Because plaintiff failed to show evidence of discriminatory intent, the defendants are entitled to summary judgment with respect to the equal protection claim.

### 4. Conspiracy

Plaintiff contends the defendants conspired against him. "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). Conclusory accusations of conspiracy do not state a claim under § 1983, unless plaintiff supports his allegations with material facts. *Babb v. Dorman*, 33 F.3d 472, 476 (5th Cir. 1994); *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990). In this case, plaintiff only offers his subjective belief that the defendants conspired against him. Because plaintiff fails to support his conclusory allegations of conspiracy with any material facts, the conspiracy claim should be dismissed. *See Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006) (disregarding conspiracy claim because plaintiff offered no evidence in support of his conclusory allegation).

### 5. Investigation of Complaints

Plaintiff alleges defendants Allen, Bell, Hall, Crowley, and Jones failed to process his grievances and impeded an investigation of plaintiff's complaints. An inmate does not have a constitutionally-protected interest in having his complaints resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Therefore, the claims concerning the alleged failure of the defendants to investigate should be dismissed.

*6. Free Exercise of Religion*

Plaintiff alleges his First Amendment right to freely exercise his religion when he was denied access to religious services and hot meals when the prison was on lockdown for two weeks in December 2014.

"Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). The Constitution dictates that prisoners be afforded reasonable opportunities to exercise the religious freedom guaranteed by the First Amendment without fear of penalty. *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986). The exercise of religious freedom, however, is restricted by valid penological objectives such as deterrence of crime, rehabilitation of prisoners, and institutional security. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

As the Supreme Court has observed:

> . . . [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 128 (1977); *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974); *Cruz*, 405 U.S. at 321. In order to ensure prison officials are afforded appropriate deference in their decision-making, prison regulations that allegedly infringe constitutional rights are judged under a reasonableness test. *O'Lone*, 482 U.S. at 349. Plaintiff must show the defendants burdened his practice of religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987).

11

Several factors are relevant when determining whether a prison regulation is reasonable. *Turner*, 482 U.S. at 89-90; *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004). The court must consider: (1) whether the regulation has a logical connection to a legitimate governmental interest; (2) whether the prisoners have alternate means of exercising their constitutional rights; (3) the impact the requested accommodation of the prisoner's asserted rights would have on other inmates, prison personnel, and the allocation of prison resources generally; and (4) whether there are ready alternatives to the regulation that accommodate both the plaintiff and the administrative needs of the prison. *Adkins*, 393 F.3d at 564.

The Fifth Circuit has held that the Free Exercise Clause does not require prison officials to provide an inmate with a special diet consistent with his religious beliefs. *Baranowski v. Hart*, 486 F.3d 112, 122 (5th Cir. 2007); *Kahey v. Jones*, 836 F.2d 948, 951 (5th Cir. 1988); *Udey v. Kastner*, 805 F.2d 1218, 1221 (5th Cir. 1987). In addition, the occasional inability to attend religious services does not rise to the level of a constitutional violation. *Green v. McKaskle*, 788 F.2d 1116, 1126 (5th Cir. 1986). Thus, the defendants' actions did not violate the Free Exercise Clause.

## II. Religious Land Use and Institutionalized Persons Act

Plaintiff alleges that missing religious services and being denied hot meals during the lockdown violated his rights under the RLUIPA, which protects the religious rights of institutionalized persons. *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). Sovereign immunity bars an RLUIPA suit for damages against the State of Texas, and against individual defendants. *Sossamon v. Texas*, 563 U.S. 277, 280 (2011); *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011). Further, plaintiff's transfer to the Telford Unit mooted his claims for declaratory and injunctive

relief. *Coleman v. Lincoln Parish Detention Center*, 858 F.3d 307, 309 (5th Cir. 2017). Accordingly, plaintiff's RLUIPA claims must be dismissed.

<u>Conclusion</u>

Defendants' motion for summary judgment is **GRANTED**. A final judgment shall be entered in accordance with this Memorandum Opinion.

So **ORDERED** and **SIGNED  August 24, 2018.**

_____

Ron Clark, Senior District Judge